# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

**FILED**

**November 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0507

**JOSEPH KUBICAN,**
**Plaintiff Below, Petitioner**

**V.**

**THE TAVERN, LLC d/b/a BUBBA'S BAR AND GRILL,**
**AND HARRY WISEMAN**
**Defendants Below, Respondents**

---

**Certified Question from the Circuit Court of Harrison County**
**Honorable Thomas A. Bedell, Judge**
**Civil Action No. 11-C-231-2**

**CERTIFIED QUESTION ANSWERED**

---

**Submitted: September 25, 2013**
**Filed: November 6, 2013**

Edmund L. Wagoner
David E. Goddard
Goddard & Wagoner
Clarksburg, West Virginia
Attorneys for the Petitioner

Gregory H. Schillace
Schillace Law Office
Clarksburg, West Virginia
Attorney for the Respondent,
The Tavern, LLC
d/b/a Bubba's Bar and Grill

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

2. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

3. "A statute that is ambiguous must be construed before it can be applied." Syllabus point 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

4. "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syllabus point 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984).

5.     W. Va. Code § 31B-3-303 (1996) (Repl. Vol. 2009) permits the equitable remedy of piercing the veil to be asserted against a West Virginia limited liability company.

6.     "[T]o 'pierce the corporate veil' in order to hold the shareholder(s) actively participating in the operation of the business personally liable . . . , there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement)."  Syllabus point 3, in part, *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 352 S.E.2d 93 (1986).

7.     To pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of the individual member(s) or managers(s) no longer exist and (2) fraud, injustice, or an inequitable result would occur if the veil is not pierced.  This is a fact driven analysis that must be applied on a case-by-case basis, and, pursuant to W. Va. Code § 31B-3-303(b) (1996) (Repl. Vol. 2009), the failure of a limited liability company to observe the usual

ii

company formalities or requirements relating to the exercise of its company powers or management of its business may not be a ground for imposing personal liability on the member(s) or manager(s) of the company.

**Davis, Justice:**

This action presents this Court with a certified question from the Circuit Court of Harrison County asking whether "West Virginia's version of the Uniform Limited liability Company Act, codified at W. Va. Code § 31B[-1-101] *et seq.*, afford[s] complete protection to members of a limited liability company against a plaintiff seeking to pierce the corporate veil?" After considering the parties' briefs, their oral arguments and the relevant law, we answer this certified question in the negative.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Following an altercation that allegedly took place at Bubba's Bar and Grill in Bridgeport, West Virginia, on February 7, 2011, petitioner Joseph Kubican, who is the plaintiff below (hereinafter "Mr. Kubican"), filed a complaint, on May 27, 2011, naming as defendants Bubba's Bar and Grill and Harry Wiseman.[1] The complaint asserted three counts against Bubba's Bar and Grill: (1) negligence; (2) negligent training and supervision of bar staff and security personnel; and (3) gross negligence, willful, wanton and reckless misconduct. Mr. Kubican subsequently learned that Bubba's Bar and Grill was a fictitious

---

[1] Mr. Wiseman allegedly had been involved in the February altercation. Two counts were asserted against Mr. Wiseman: (1) assault and battery and (2) malicious, willful, wanton and reckless misconduct. Mr. Wiseman is not participating in this appeal insofar as none of the issues herein raised pertain to the claims asserted against him.

1

name used for business purposes by the respondent, The Tavern, LLC (hereinafter "The Tavern"). Additionally, Mr. Kubican learned that James Paugh and Lawson Mangum were the only members of The Tavern. Following the exchange of written discovery and the deposition of Lawson Mangum pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure, Mr. Kubican sought leave to amend his complaint.[2] The purpose of the proposed amended complaint was to: (1) utilize the proper company name; (2) add as defendants the individual members of The Tavern, James Paugh and Lawson Mangum (hereinafter "Paugh and Mangum"); and (3) assert a veil piercing count against Paugh and Mangum. The proposed amended complaint also reasserted the three negligence counts against the business entity that had been included in the original complaint.[3]

The proposed amended complaint's veil piercing count against Paugh and Mangum alleged that Paugh and Mangum: (1) as the only members of The Tavern, exercised full control over the company and actively participated in its management; (2) held themselves out to others as the owners of The Tavern d/b/a Bubba's Bar and Grill; (3) held themselves out as personally responsible for the debts of the company; (4) commingled personal funds with those of the company; (5) used the company to conduct personal business; (6) used the company as a conduit to procure business and services for related

---

[2]*See* W. Va. R. Civ. P. 15(a).

[3]The proposed amended complaint likewise reasserted the counts pertaining to Mr. Wiseman; however, those claims are not relevant to this appeal. *See supra* note 1.

2

entities; (7) failed to adhere to legal formalities necessary to maintain limited liability company status; (8) diverted the company's assets to their own benefit and use; (9) failed to maintain records of the company's corporate and business activities; (10) failed to insure the company and left it grossly undercapitalized for the reasonable risks of owning and operating a bar; and (11) operated the company as a mere alter ego of themselves. Based upon these allegations, Mr. Kubican asserted that the circuit court was entitled to disregard the corporate fiction and hold Paugh and Mangum personally liable for the debts of The Tavern.

Defendant, The Tavern, filed a response to Mr. Kubican's motion to amend the complaint resisting the same and arguing that the sole purpose for adding Paugh and Mangum as defendants was to pierce the veil of their West Virginia limited liability company (hereinafter "LLC"), which, according to The Tavern, is prohibited by West Virginia law. Relying on W. Va. Code § 31B-3-303 (1996) (Repl. Vol. 2006),[4] The Tavern argued that members of an LLC are not personally liable for any debt, obligation or liability of the company solely by reason of being or acting as a member or manager. The Tavern pointed out that Count 6 of the amended complaint, titled "Veil Piercing," was the only count purporting to assert a claim against Paugh and Mangum. Thus, no allegations of wrongdoing on the part of Paugh and Mangum have been asserted by Mr. Kubican. Rather, according to

---

[4]The full text of W. Va. Code § 31B-3-303 (1996) (Repl. Vol. 2009), which is titled "Liability of members and managers," is quoted in the discussion section of this opinion. *See* Section III, *infra*.

The Tavern, the claims are based solely on Paugh's and Mangum's status as members and/or managers of the LLC. Thus, The Tavern argued, the circuit court should refuse the motion to amend the complaint.

Mr. Kubican filed a reply to The Tavern's response to his motion to amend his complaint. In his reply, Mr. Kubican challenged the defendant's interpretation of cases it cited in support of its argument that members of an LLC may not be held liable for any debt, obligation or liability of the company. According to Mr. Kubican, none of the cases cited by The Tavern stood for the proposition asserted by the defendant. In addition, Mr. Kubican noted that, on November 1, 2011, the West Virginia Secretary of State issued a "Certificate of Administrative Dissolution" certifying that The Tavern had failed to file its annual report and/or pay the annual report fee as required by West Virginia law. Finally, Mr. Kubican filed a supplemental reply in support of his motion to amend his complaint wherein he presented the circuit court with copies of The Tavern's banking records. Mr. Kubican argued that the banking records established that The Tavern was a sham company insofar as the records demonstrated that, throughout The Tavern's existence, company funds were being used to purchase personal items, including chiropractic services, and to pay for numerous purchases at various restaurants. Mr. Kubican further asserted that, although Bubba's Bar & Grill was purportedly closed in June 2011, and The Tavern has also ceased to exist, use of The Tavern's credit card and bank account have not stopped. Mr. Kubican stated that subpoenaed

4

bank records showed the accounts were still in use in February 2012, the most recent records he could obtain by subpoena.[5] According to Mr. Kubican, those records indicated that in February 2012 more than 115 transactions were made using the company checking account at locations such as grocery stores, convenience stores, restaurants, medical providers, hair stylists, and amusement parks. Mr. Kubican asserted that the records also reflect a trip to Myrtle Beach, South Carolina.

Instead of ruling on Mr. Kubican's motion to amend his complaint, the circuit court determined that it had been presented with an issue of first impression and, therefore, certified the following question to this Court by order entered April 12, 2012:

> Does West Virginia's version of the Uniform Limited Liability Company Act, codified at W. Va. Code § 31B[-1-101] *et seq*., afford complete protection to members of a limited liability company against a plaintiff seeking to pierce the corporate veil?

The circuit court answered this question in the affirmative based upon its conclusion that such an answer was in accord with the plain language of W. Va. Code § 31B-3-303.[6]

---

[5]Mr. Kubican's supplemental reply appears to have been filed on March 20, 2012.

[6]For the full text of W. Va. Code § 31B-3-303, see the discussion section of this opinion. *See infra* Section III.

## II.

## STANDARD OF REVIEW

We exercise *de novo* review of the instant certified question: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). Furthermore, to the extent that reaching an answer to the question herein certified requires us to interpret a statutory provision, our review is likewise *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)." Accordingly, we proceed with our plenary analysis.

## III.

## DISCUSSION

Mr. Kubican argues that this Court should answer the certified question in the negative and conclude that West Virginia's Uniform Limited Liability Company Act does not afford complete protection to members of an LLC against a plaintiff seeking to pierce the corporate veil. Mr. Kubican explains that West Virginia adopted its version of the act from the 1996 Uniform Limited Liability Company Act (hereinafter "ULLCA") drafted by the

National Conference of Commissioners on Uniform State Laws.[7] According to Mr. Kubican,

numerous other jurisdictions that also have adopted the ULLCA have addressed the question

of whether the Act precludes veil piercing. Mr. Kubican submits that "not a single court has

concluded that the act prohibits" veil piercing. Finally, Mr. Kubican opines that adopting a

rule that the LLC business form affords complete protection to LLC members would render

West Virginia a safe haven for corporate irresponsibility and fraud.

The Tavern[8] argues that W. Va. Code § 31B-3-303 expressly provides that

members or managers of West Virginia LLCs are not personally responsible for any liability

---

[7]Mr. Kubican submits that W. Va. Code § 31B-3-303, which pertains to liability of members and managers of limited liability companies, is identical to the corresponding section of the 1996 Uniform Limited Liability Company Act, § 303, and nearly identical to the corresponding section of the Revised Uniform Limited Liability Company Act adopted in 2006 (hereinafter "2006 RULLCA"), which is § 304.

For a full copy of the 1996 ULLCA, see: *http://www.uniformlaws.org/shared/docs/limited%20liability%20company/ullca96.pdf* (last visited October 24, 2013).

[8]The Tavern first responds that the circuit court correctly refused to allow the amendment of the complaint as the claims in the amendment against the members of The Tavern would not have permitted the presentation of the merits of the action.

It should be noted that this case is before this Court on a certified question and not an appeal from a ruling of the circuit court denying a motion to amend the complaint. Thus, this argument asserted by The Tavern is not relevant to the issue before the Court. Furthermore, it does not appear that the circuit court has ruled on the motion to amend the complaint. Presumptively, such a ruling would be made only after the herein certified question has been answered by this Court. Otherwise, this Court's endeavor to answer the certified question would be an act of futility.

of the company. Therefore, The Tavern contends, a plain reading of the statute supports the position that piercing the veil of an LLC is not allowed.

In the LLC context, the purpose of piercing the corporate veil would be to hold members and/or managers of the LLC personally liable for the wrongful actions of the business.[9] *Cf.* 18 C.J.S. *Corporations* §14, at 319 (2007) ("'Piercing the corporate veil' is the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts." (footnote omitted)). Thus, we first must determine whether West Virginia law allows an LLC member or manager to be held liable in this manner.

We begin our analysis with an examination of W. Va. Code § 31B-3-303, the provision of the West Virginia Uniform Limited Liability Act that addresses the liability of LLC members and managers. In doing so, we recognize that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt.

---

[9]This type of liability is distinguishable from holding an LLC member or manager personally liable based upon his or her own tortious actions. *See* 51 Am. Jur. 2d *Limited Liability Companies* § 16, at 848 (2011) ("Whereas managers of limited liability companies may not be held liable for the wrongful conduct of the companies merely because of their manager status, they may nonetheless be held accountable for their personal participation in tortious or criminal conduct, even when performing their duties as manager." (footnote omitted)).

8

1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). The initial step in ascertaining the intent of the Legislature is to consider the language of the statute at issue. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Nevertheless, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). In other words, "'[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.'" *Mace v. Mylan Pharms., Inc.*, 227 W. Va. 666, 673, 714 S.E.2d 223, 230 (2011) (quoting *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949)).

With the foregoing canons in mind, we turn now to the particular language of W. Va. Code § 31B-3-303, which states in part:

> (a) Except as otherwise provided in subsection (c) of this section, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the company. *A member or manager is not personally liable for a debt, obligation or liability of the company solely by reason of being or acting as a member or manager.*

9

. . . .

(c) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations or liabilities of the company if:

(1) A provision to that effect is contained in the articles of organization; and

(2) A member so liable has consented in writing to the adoption of the provision or to be bound by the provision.

W. Va. Code § 31B-3-303. The language of this provision is unambiguous insofar as it declares that, with the exception noted in subsection (c), "[a] member or manager is not personally liable for a debt, obligation or liability of the company *solely by reason of being or acting as a member or manager*." The key language relevant to the issue presented in the instant action, which is italicized in the foregoing quote, proscribes liability "*solely* by reason of being or acting as a member or manager."[10] By proscribing liability on the *sole* basis of being a member or manager of an LLC, the Legislature implicitly has left intact the prospect

---

[10]To be clear, liability based *solely* on being or acting as a member or manager of an LLC is subject to the exception set out in subsection (c) of W. Va. Code § 31B-3-303. Pursuant to that exception, a manager or member of an LLC *is* personally liable "*solely* by reason of being or acting as a member or manager" when:

(1) A provision to that effect is contained in the articles of organization; and

(2) A member so liable has consented in writing to the adoption of the provision or to be bound by the provision.

W. Va. Code § 31B-3-303 (emphasis added).

10

of an LLC member or manager being liable on grounds that are not based solely on a person's status as a member or manager of an LLC. Our reasoning is supported by the maxim *expressio unius est exclusio alterius*: "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syl. pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984). *See also State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 128, 464 S.E.2d 763, 770 (1995) ("*Expressio unius est exclusio alterius* (express mention of one thing implies exclusion of all others) is a well-accepted canon of statutory construction." (citations omitted)). Furthermore, this conclusion is in accord with the manner in which other courts have interpreted similar statutes. *See Bowen v. 707 On Main*, No. CV020282643S, 2004 WL 424501, at *3 (Conn. Super. Ct. Feb. 24, 2004) ("The principle of piercing the corporate veil . . . also is applicable to limited liability companies and their members. General Statutes § 34-133." (quotations and citations omitted));[11] *Kaycee Land & Livestock v. Flahive*, 46

---

[11]Similar to the West Virginia statute, Connecticut's limited liability statute states:

> "(a) Except as provided in subsection (b) of this section, a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company."

*Bowen v. 707 On Main*, No. CV020282643S, 2004 WL 424501, at *2 n.4 (Conn. Super. Ct. (continued...)

11

P.3d 323, 325-26 (Wyo. 2002) ("[W]e are asked to broadly pronounce that there are no circumstances under which this court will look through a failed attempt to create a separate LLC entity and prevent injustice. We simply cannot reach that conclusion and believe it is improvident for this court to prohibit this remedy [of piercing the veil] from applying to any unforeseen circumstance that may exist in the future.").[12] *See also Filo Am., Inc. v. Olhoss Trading Co., L.L.C.*, 321 F. Supp. 2d 1266, 1269 (M.D. Ala. 2004) (observing that "commentators who have discussed the issue as a nationwide matter have concluded that the 'veil-piercing' doctrine applies to LLCs. . . . Further, the courts in other States that have considered whether the 'veil-piercing' doctrine applies to LLCs have concluded that it does," and collecting authorities). Accordingly, we hold that W. Va. Code § 31B-3-303 permits the

---

[11](...continued)
Feb. 24, 2004) (quoting Connecticut General Statutes § 34-133(a)).

[12]The relevant Wyoming statute provides that:

> "Neither the members of a limited liability company nor the managers of a limited liability company managed by a manager or managers are liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company."

*Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 326 (Wyo. 2002) (quoting Wyo. Stat. Ann. § 17–15–113 (LexisNexis 2001)). In support of finding the foregoing language allowed for piercing the veil of an LLC, the *Kaycee* court expressed its agreement that "'[i]t is difficult to read statutory § 17–15–113 as intended to preclude courts from deciding to disregard the veil of an improperly used LLC.'" *Kaycee*, 46 P.3d at 326 (quoting Harvey Gelb, *Liabilities of Members and Managers of Wyoming Limited Liability Companies*, 31 Land & Water L. Rev. 133 at 142 (1996)). In 2010, Wyoming repealed this statute and adopted the 2006 RULLA. The current Wyoming statute addressing the liability of LLC members and managers is Wyo. Stat. Ann. § 17-29-304.

equitable remedy of piercing the veil to be asserted against a West Virginia Limited Liability Company.

Although the language employed by the Legislature has preserved the ability to pierce the veil of an LLC to hold a member or manager liable, the Legislature has failed to identify the circumstances under which the imposition of such liability is proper. Thus, in this regard, W. Va. Code § 31B-3-303 is ambiguous and must be interpreted. Subsection (b) of W. Va. Code § 31B-3-303 does provide a starting point for our analysis by specifying that "[t]he failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is *not* a ground for imposing personal liability on the members or managers for liabilities of the company." (Emphasis added). Thus, while is it clear that the failure of a limited liability company to observe "usual company formalities" is not sufficient grounds upon which to pierce the LLC veil and hold its members personally liable, we must, nevertheless, endeavor to identify those grounds upon which the veil of an LLC may be pierced in order to fully answer the certified question presented in this action. Because this is a novel question in West Virginia, we find it helpful to consider the criteria used by other courts to determine when it is appropriate to pierce the veil of an LLC.

The State of Illinois has enacted statutory provisions identical to those contained in W. Va. Code § 31B-3-303. *See* 805 ILCS 180/10–10 (a), (c), & (d) (West 2008). In *Seater Construction Company, Inc. v. Deka Investments, LLC*, No. 2–12–1140, 2013 WL 3272487, at *8 (Ill. Ct. App. June 24, 2013), the Appellate Court of Illinois acknowledged that "no Illinois case has held that the doctrine of piercing the corporate veil applies to an Illinois limited liability company (LLC)." Nevertheless, the court observed that "'while the [Illinois Limited Liability Company] Act provides specifically that the failure to observe the corporate formalities is not a ground for imposing personal liability on the members of an LLC, it does not bar the other bases for corporate veil piercing, such as alter ego, fraud or undercapitalization.'" *Seater*, 2013 WL 3272487, at *8 (quoting *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 960 (2008)).

In determining whether to pierce the veil of an LLC, the *Seater* court applied the existing Illinois two-prong analysis for piercing the veil of a corporation. The two-part test considered: (1) unity of interest and ownership and (2) fraud, injustice or inequitable consequences. Observing that numerous factors are applicable to an analysis pertaining to the unity of interest and ownership prong of the test, but also noting that several of the factors are inapplicable to piercing the veil of an LLC, the *Seater* court commented:

> Ordinarily, in determining whether the "unity of interest and ownership" prong of the piercing-the-corporate-veil test is met, a court considers many factors, including: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe

14

corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders. *Fontana*[ *v. TLD Builders, Inc.*], 362 Ill. App. 3d [491,] 503 [(2005)]. Several of the factors are inapplicable to piercing the veil of an LLC, because they deal with adherence to corporate formalities. 805 ILCS 180/10–10(c) (West 2008).

*Seater*, 2013 WL 3272487, at *8. Based upon the arguments presented to the *Seater* court by the appellant, the court addressed factors (1), (8), (9) and (10) to ultimately conclude that grounds did not exist to warrant piercing the veil of the LLC at issue under the facts presented in that case.

Other courts similarly have applied the same basic analysis to piercing the veil of an LLC that would be applied in the context of piercing the corporate veil, but with the acknowledgment that some factors may not apply. In *Filo America, Inc. v. Olhoss Trading Co., L.L.C.*, 321 F. Supp. 2d 1266, the United States District Court concluded that,

under Alabama law, it is possible to "pierce the veil" of an LLC in some situations. The factors that Alabama courts consider in deciding whether it is appropriate to "pierce the veil" of a corporation are: (1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; (3) operation of the corporation as an instrumentality or alter ego. *Culp v. Economy Mobile Homes, Inc.*, 895 So. 2d 857, [859-60,] 2004 WL 541818 (Ala.) (internal citations omitted). While some of

15

these factors may not apply to LLCs in the same way they apply to corporations, *see* [Bradley J. Sklar and W. Todd Carlisle, *The Alabama Limited Liability Company Act*, 45 Ala. L. Rev. 145, 202 (1993)] ("Inadequacy of capital should provide less of a basis for piercing the LLC veil than the corporate veil"), a fraudulent purpose in the conception or operation of an LLC should certainly be a valid reason for "piercing" the LLC's "veil." Eric Fox, Note, *Piercing the Veil of Limited Liability Companies*, 62 Geo. Wash. L. Rev. 1143 (1994) ("If it is in the public interest to disregard the legal fiction when those benefitting from that fiction commit fraudulent conduct, it should not matter to the court whether the legal fiction is used by corporate shareholders or LLC members").

*Filo Am., Inc.*, 321 F. Supp. 2d at 1269-70.[13]

---

[13]In reaching this conclusion, the district court reasoned that

[b]ecause the LLC borrows its limited liability characteristics from the law applicable to corporations, the "veil-piercing" exception applicable to corporations should also apply to LLCs. In other words, since a stockholder or owner of a corporation can be held liable for the debts and obligations of the corporation in the rare case in which "piercing the corporate veil" is appropriate, a member of an LLC should be similarly liable when it is appropriate for the "veil" of the LLC to be "pierced." *See* [Bradley J. Sklar and W. Todd Carlisle, *The Alabama Limited Liability Company Act*, 45 Ala. L. Rev. 145, 200 (1993)] (stating that corporate precedents on veil piercing will probably apply to LLCs in Alabama).

*Filo Am., Inc. v. Olhoss Trading Co., L.L.C.*, 321 F. Supp. 2d 1266, 1269 (M.D. Ala. 2004).

The Court of Appeals of Utah also applied a corporate veil piercing analysis to an LLC in *d'Elia v. Rice Development, Inc*., 147 P.3d 515 (Utah Ct. App. 2006). The *d'Elia* court observed that,

> [i]n *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320 (D. Utah 1997), a federal district court determined that under Utah law the corporate veil piercing doctrine equally applies to Utah liability companies. *See id.* at 1335 (noting that although "there is little case law discussing veil piercing theories outside the corporate context, most commentators assume that the doctrine applies to limited liability companies" and citing a number of commentators).

*d'Elia*, 147 P.3d at 521 n.5. Accordingly, the *d'Elia* court applied the same analysis it would have used to determine whether a non-LLC corporate entity's veil should be pierced and ultimately concluded that "[t]he record reveals that substantial evidence exists to support the trial court's decision *not* to pierce the corporate veil." 147 P.3d at 523 (emphasis added).

Thus, it appears that most courts addressing the question of whether to pierce the veil of an LLC apply the same test used to analyze piercing the corporate veil. *See, e.g., Thomas v. Bridges*, 120 So. 3d 338, 342 (La. Ct. App. 2013) (applying "five-factor test [for piercing corporate veil] supplied by the Louisiana Supreme Court in *Riggins v. Dixie Shoring Co., Inc*., 590 So. 2d 1164, 1168 & n.5 (La. 1991)" to an LLC; elements of five factor test "include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records;

17

and 5) failure to hold regular shareholder and director meetings, *Riggins*, 590 So. 2d at 1168.").[14]  These courts, however, often recognize that certain elements of the test may not apply at all, while other elements may apply to an LLC in a different manner than they would apply to a corporation.

Some courts additionally have cautioned that a veil piercing analysis is a fact driven analysis that must be engaged on a case-by-case basis.  For example, in *Kaycee Land*

---

[14]For examples of other tests applied by courts deciding whether to pierce the veil of an LLC, see *Restaurant of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc*., 84 So. 3d 32, 39 (Miss. Ct. App. 2012) (holding that "to pierce the veil of an LLC the complaining party must prove LLC membership as well as (a) some frustration of contractual expectations, (b) flagrant disregard of LLC formalities by the LLC members, and (c) fraud or misfeasance by the LLC member"); *Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 283 Neb. 19, 27-28, 810 N.W.2d 677, 685 (2012) ("[T]he individual members and managers of a limited liability company are generally not liable for a debt, obligation, or liability of the company.  And a court will disregard such a company's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.  The company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears.  And a plaintiff seeking to impose liability on an individual member or manager has the burden of proving that the company's identity should be disregarded to prevent fraud or injustice to the plaintiff." (footnotes omitted)).  *But see White v. Longley*, 358 Mont. 268, 280 n.2, 244 P.3d 753, 761 n.2 (2010) ("Some commentators and courts have advocated application to LLCs of the rules regulating piercing the corporate veil to impose individual liability. *See*[,] *e.g.*[,] [Steven C. Bahls, *Application of Corporate Common Law Doctrines to Limited Liability Companies*, 55 Mont. L. Rev. 44, 59–66 (1994)].  Because § 35–8–304, MCA, clearly does not establish blanket liability protection for members of LLCs, and because the intent of that section is to allow liability in a situation in which the member acting individually would be liable, it is not necessary to engraft the veil piercing law from the corporate arena to resolve this issue.").

18

*& Livestock v. Flahive*, 46 P.3d 323, the Supreme Court of Wyoming addressed a certified

question asking:

> In the absence of fraud, is a claim to pierce the Limited Liability entity veil or disregard the Limited Liability Company entity in the same manner as a court would pierce a corporate veil or disregard a corporate shield, an available remedy against a Wyoming Limited Liability Company under Wyoming's Limited Liability Company Act, Wyo. Stat. §§ 17–15–101 through 17–15–144 (2000)?

*Id.* at 324.[15] The *Kaycee* court observed that "Wyoming courts, as well as courts across the

country, have typically utilized a fact driven inquiry to determine whether circumstances

justify a decision to pierce a corporate veil." *Id.* at 325 (citation omitted). Because the case

had come "as a certified question in the abstract with little factual context," the court opined

that "[i]t would be inadvisable in this case, which lacks a complete factual context, to attempt

to articulate all the possible factors to be applied to LLCs in Wyoming in the future." *Id.* at

325 & 328.[16]

---

[15]"Wyoming was the first state to enact LLC statutes." *Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 326. The language of the particular statute at issue in *Kaycee* is quoted *supra* at note 12.

[16]Nevertheless, as with the other cases cited earlier in this opinion, the *Kaycee* court indicated that most courts have, in general, applied to LLCs the existing common law factors for piercing the veil in the corporate context. The court in *Kaycee* also recognized that, "[c]ertainly, the various factors which would justify piercing an LLC veil would not be identical to the corporate situation for the obvious reason that many of the organizational formalities applicable to corporations do not apply to LLCs." *Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 328. Nevertheless, a subsequent Wyoming case provided some guidance as to the general factors that would be relevant to an LLC veil piercing analysis by observing that

(continued...)

19

New Jersey has agreed with the analysis utilized by the Wyoming court in

*Kaycee Land & Livestock*. After favorably discussing the *Kaycee* opinion, the Superior

Court of New Jersey commented that

> the particular standard [for piercing the veil of an LLC] should
> be developed over time, as courts address concrete cases. It is
> not for this court, solely on the facts presented to it in this case,
> to formulate a generally-applicable standard. It is sufficient for
> this court to conclude that in this case, Borne's failure to
> scrupulously identify the entity through which he was acting, his
> dominion and control of Esplanade L.L.C., and the entity's
> undercapitalization should not loom as large as it might were the
> entity a corporation.

*D.R. Horton Inc.-New Jersey v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL

1939778, at *36 (N.J. Super. Ct. Law Div. Aug. 10, 2005).[17] The New Jersey court

---

[16](...continued)
"[t]he LLC veil piercing factors used from the corporate arena
can be reduced to four categories:

    1. Fraud;

    2. Inadequate capitalization;

    3. Failure to observe company formalities; and

    4. Intermingling the business and finances of the
company and the member to such an extent that there is no
distinction between them[.]"

*Gasstop Two, LLC v. Seatwo, LLC*, 225 P.3d 1072, 1077 (Wyo. 2010) (quoting Phillip L.
Jelsma and Pamela Everett Nollkamper (Phillip P. Whynott), *The Limited Liability Company*,
§ 11-130 (2009)).

[17]The New Jersey LLC statute provides, in relevant part:

(continued...)

ultimately applied the common law test for piercing the veil of a corporation, tempered by

the fact that the business at issue was an LLC, and concluded that the circumstances

presented did not warrant piercing the LLC veil:

> under the . . . two-part test, Horton NJ must prove that (1) Esplanade L.L.C. was a mere instrumentality or alter ego of Borne; and (2) Borne abused the business form to perpetrate a fraud, injustice, or otherwise circumvent the law. Particularly given the lesser weight assigned to the formalities, and dominion-and-control factors, Horton NJ has failed to prove the first prong. Moreover . . . the court finds no injustice or circumvention of law, notwithstanding that Esplanade L.L.C. ultimately lacked sufficient capital to fulfill its obligations.

*D.R. Horton Inc.*, 2005 WL 1939778, at *36. Notably, however, the New Jersey court

cautioned that

> persuasive authorities indicate that corporate veil-piercing doctrine should not be mechanically applied to cases involving limited liability companies. In particular, a court should view in

---

[17](...continued)

> "Except as otherwise provided by this act, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member, manager, employer or agent of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company, or for any debt, obligation or liability of any other member, manager, employee or agent of the limited liability company, by reason of being a member, or acting as a manager, employee or agent of the limited liability company."

*D.R. Horton Inc.-New Jersey v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at *31-32 (N.J. Super. Ct. Law Div. Aug. 10, 2005) (quoting N.J.S.A. § 42:2B-23).

21

a different light the factors of adherence to corporate formalities, and scrutiny of owners' dominion and control.

. . . .

. . . [C]ourts that have expressly considered the differences between the two business forms have concluded that veil-piercing doctrine should be molded to accommodate the differences. . . .

. . . .

As noted by the Wyoming Supreme Court, adherence to formalities is one factor that should weigh differently in the case of a limited liability company. *Kaycee Land and Livestock v. Flahive*, *supra*, 46 P.3d at 328. Vandervoort concurs for two reasons. [J. Vandervoot, *Piercing the Veil of Limited Liability Companies: The Need For A Better Standard*, 3 DePaul Bus. & Com. L.J. 51, 68-70 (2004)]. First, a small-business owner's failure to adhere to formalities may simply reflect disregard of formalities "irrelevant to their actual operation", and lack of funds to hire lawyers and others to keep track of statutory obligations. None of that may evidence misuse of the statute. *Ibid*. Second, "LLC's [sic] have relatively few statutorily mandated formalities and have a considerable amount of freedom and flexibility as to the management structure of the entity." This informality, encouraged by statute, should not then be a basis to avoid statutory limited liability. *Ibid*. *See* [David L. Cohen, *Theories of the Corporation and the Limited Liability Company: How Should Courts and Legislatures Articulate Rules for Piercing the Veil, Fiduciary Responsibility and Securities Regulation for the Limited Liability Company?*, 51 Okla. L. Rev. 427, 457 (2004)] ("[T]o allow piercing for disregarding LLC formalities . . . will make the promise of limited liability for LLCs empty by definition.").

*D.R. Horton Inc.*, 2005 WL 1939778, at *33-35.

Similarly, in *Bowen v. 707 On Main*, 2004 WL 424501, the Superior Court of

Connecticut explained that

> "[T]he determination of whether to pierce the corporate
> veil . . . to disregard the protections afforded a limited liability
> company requires the same analysis [as that of a corporate
> entity]." *KLM Industries, Inc. v. Tylutki*, 75 Conn. App. 27, 28
> n.2, 815 A.2d 688, *cert. denied*, 263 Conn. 916, 821 A.2d 770
> (2003).
>
> . . . .
>
> "The concept of piercing the corporate veil is equitable
> in nature and courts should pierce [it] only under exceptional
> circumstances." (Internal quotation marks omitted.) *Hershey v.
> Lonrho*, 73 Conn. App. 78, 87, 807 A.2d 1009 (2002). Such
> exceptional circumstances would include instances "where the
> corporation is a mere shell, serving no legitimate purpose, and
> used primarily as an intermediary to perpetuate fraud or promote
> injustice." (Internal quotation marks omitted.) *SFA Folio
> Collections, Inc. v. Bannon*, 217 Conn. 220, 230, 585 A.2d 666,
> *cert. denied*, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008
> (1991).

*Bowen*, 2004 WL 424501, at *2.[18] Finally, the court noted that

---

[18]The *Bowen* court described the test for piercing the corporate veil as follows:

> "When determining whether piercing the corporate veil
> is proper, our [courts have] endorsed two tests: the
> instrumentality test and the identity test. The instrumentality
> rule requires . . . proof of three elements: (1) Control, not
> merely majority or complete stock control, but complete
> domination, not only of finances but of policy and business in
> respect to the transaction attacked so that the corporate entity as
> to this transaction had at the time no separate mind, will or
> existence of its own; (2) that such control must have been used

(continued...)

23

"One of the principal reasons to use an L.L.C. is that the owners and managers, if the owners so elect, have limited liability from contract and tort claims of third parties.  M. Pruner, *A Guide to Connecticut Liability Companies*, § 3.1.1, p. 9 (1995)."  *Stone v. Frederick Hobby Assoc. II*, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 00 0181620 (July 10, 2001, Mintz, J.). . . .

"No hard and fast rule, however, as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case."  (Internal quotation marks omitted.)  *Angelos Tomasso v. Armor Construction & Paving, Inc*., 187 Conn. 544, 555-56, 447 A.2d 406 (1982).

---

[18](...continued)
by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of the plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of."  (Internal quotation marks omitted.)  [*Mountview*] *Plaza, Inc. v. World Wide Pet Supply, Inc*., [76 Conn. App. 627,] 633-34[, 820 A.2d 1105, 1110 (2003)].  "The identity rule has been stated as follows:  If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise."  (Internal quotation marks omitted.)  *Litchfield Asset Management Corp. v. Howell*, [70 Conn. App. 133,] 156[, 799 A.2d 298, 315, *cert. denied*, 261 Conn. 911, 806 A.2d 49 (2002)].

*Bowen*, 2004 WL 424501 at *2.

*Bowen*, 2004 WL 424501, at \*4. *See also Martin v. Freeman*, 272 P.3d 1182, 1184 (Colo. App. 2012) ("To pierce the LLC veil, the court must conclude (1) the corporate entity is an alter ego or mere instrumentality; (2) the corporate form was used to perpetrate a fraud or defeat a rightful claim; and (3) an equitable result would be achieved by disregarding the corporate form. . . . The third prong, in particular, recognizes that veil piercing is a 'fact-specific' inquiry." (internal citation omitted)).

Based upon the foregoing authority, this Court will consider West Virginia common law standards for piercing the corporate veil in order to establish guidance for lower courts deciding whether to pierce the veil of an LLC. In doing so, we are mindful that the analysis necessarily is fact based and must be applied to LLCs on a case-by-case basis. *See Southern Elec. Supply Co. v. Raleigh Cnty. Nat'l Bank*, 173 W. Va. 780, 787, 320 S.E.2d 515, 523 (1984) ("[D]ecisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details." (footnote omitted)).

With regard to corporate veil piercing in general, this Court has held that "[t]he law presumes . . . that corporations are separate from their shareholders." Syl. pt. 3, in part, *Southern Elec. Supply Co.*, 173 W. Va. 780, 320 S.E.2d 515. Nevertheless,

> "[w]hile, legally speaking, a corporation constitutes an entity separate and apart from the persons who own it, such is a fiction of the law introduced for purpose of convenience and to subserve the ends of justice; and it is now well settled, as a

25

general principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences." Syl. pt. 10, *Sanders v. Roselawn Mem'l Gardens, Inc.*, 152 W. Va. 91, 159 S.E.2d 784 (1968).

Syl. pt. 2, *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 352 S.E.2d 93 (1986). More specifically, we held in *Laya* that

> to "pierce the corporate veil" in order to hold the shareholder(s) actively participating in the operation of the business personally liable . . . , there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement).

Syl. pt. 3, in part, *id*.[19] Although the *Laya* test was applied in the context of a breach of contract, a subsequent case has made clear that the test applies in other contexts as well. *See St. Peter v. Ampak-Div. of Gatewood Prod., Inc.*, 199 W. Va. 365, 484 S.E.2d 481 (1997) (addressing veil piercing analysis in connection with retaliatory discharge and discrimination claims).

---

[19]We do not perceive the characterization of the first element of the *Laya* test as a "disregard of formalities requirement" to be identical to the "usual company formalities or requirements" that are prohibited as a grounds for personal liability of an LLC member under W. Va. Code § 31B-3-303. While some considerations of these two types of formalities may be the same or similar, we find the *Laya* test to be more broad. The broader application of the *Laya* test is demonstrated by the non-exclusive list of factors that may be considered in conducting a veil piercing analysis under *Laya*. Those factors are quoted *infra* in this opinion.

26

In reaching the foregoing holding in *Laya*, we set out a non-exhaustive list of factors that might be relevant in determining whether to pierce a corporate veil. Those factors included:

> (1) commingling of funds and other assets of the corporation with those of the individual shareholders;
>
> (2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);
>
> (3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;
>
> (4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;
>
> (5) failure to maintain corporate minutes or adequate corporate records;
>
> (6) identical equitable ownership in two entities;
>
> (7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);
>
> (8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;
>
> (9) absence of separately held corporate assets;
>
> (10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

27

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;

(18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;

(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

*Laya*, 177 W. Va. at 347-48, 352 S.E.2d at 98-99. *See also St. Peter*, 199 W. Va. at 372-73,

484 S.E.2d at 488-89 ("'Decisions to "pierce" involve multifarious considerations, including

inadequacy of capital structures, whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder, whether two corporations have commingled their funds so that their accounts are interchangeable; whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused either entity, or failed to keep separate records. Other reasons to disregard the structure are: *total* control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or entity to be indistinguishable from another; common shareholders, common officers and employees, and common facilities.'" (quoting *Southern Elec. Supply Co.,* 173 W. Va. at 788, 320 S.E.2d at 523)).

While many of the foregoing factors, among others, may be relevant to a court deciding whether to pierce the veil of an LLC, we hesitate to adopt a test that sets out specific factors insofar as this Court and others have cautioned that such an analysis must be applied on a case-by-case basis considering the particular facts presented therein. Consequently, we establish a more general test following the lead of the Court in *Laya*, and hold that, to pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of the individual member(s) or managers(s)

29

no longer exist and (2) fraud, injustice, or an inequitable result would occur if the veil is not pierced. This is a fact driven analysis that must be applied on a case-by-case basis and, pursuant to W. Va. Code § 31B-3-303(b), the failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business may not be a ground for imposing personal liability on the member(s) or manager(s) of the company.[20]

The certified question presented in this cases asks whether "West Virginia's version of the Uniform Limited liability Company Act, codified at W. Va. Code § 31B[-1-101], *et seq.*, afford[s] complete protection to members of a limited liability company against a plaintiff seeking to pierce the corporate veil?" Applying our foregoing analysis to this question, we answer in the negative.

## IV.

## CONCLUSION

For the reasons set out above, we answer the question certified to this Court by the Circuit Court of Harrison County in the negative and hold that W. Va. Code § 31B-3-303 (1996) (Repl. Vol. 2009) permits the equitable remedy of piercing the veil to

---

[20]Because we are addressing a certified question, we do not apply our holding to the case *sub judice* to determine whether the LLC veil should be pierced in this instance. Such a determination must be made by the circuit court.

be asserted against a West Virginia limited liability company. Furthermore, to pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of the individual member(s) or managers(s) no longer exist and (2) fraud, injustice or an inequitable result would occur if the veil is not pierced. This is a fact driven analysis that must be applied on a case-by-case basis, and, pursuant to W. Va. Code § 31B-3-303(b), the failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business may not be a ground for imposing personal liability on the member(s) or manager(s) of the company.

Certified Question Answered.