**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1281**

---

RANDY LUNA, individually and for others similarly situated,

Plaintiff – Appellee,

v.

TUG HILL OPERATING, LLC,

Defendant – Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:23-cv-00361-JPB)

---

Argued:  May 6, 2025                                            Decided:  July 1, 2025

---

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Harris and Judge Keenan joined.

---

**ARGUED:**  Christian Charles Antkowiak, BUCHANAN INGERSOLL & ROONEY PC, Pittsburgh, Pennsylvania, for Appellant.  Richard Jennings Burch, Houston, Texas, for Appellee.  **ON BRIEF:**  Erin J. McLaughlin, BUCHANAN INGERSOLL & ROONEY LLP, Pittsburgh, Pennsylvania, for Appellant.   Anthony J. Majestro, POWELL & MAJESTRO PLLC, Charleston, West Virginia; David M. Mathews, Josephson Dunlap LLP, Houston, Texas, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

In most contract interpretation cases, we must decide what a particular word or phrase means. Here, our question is slightly different. The question presented by this appeal is who the parties to the agreement are. More specifically, in the case of a single-member limited liability company, is the party to the contract the LLC's sole member or the LLC as an entity? It turns out we answer this question the same way we interpret the meaning of a word or phrase—by looking to the text of the agreement. When we do that, it becomes clear that the LLC, not its sole member, entered the contract at issue in this appeal.

That is what the district court determined as well. When Randy Luna sued Tug Hill Operating, LLC for Fair Labor Standards Act violations, Tug Hill moved to transfer venue or to compel arbitration and dismiss, claiming it was a third-party beneficiary of a contract under which Luna agreed to resolve employment disputes through arbitration. Luna responded that he did not personally enter the contract Tug Hill sought to enforce. Luna pointed out that his LLC—known as The Texan, LLC—was the party to that agreement. The district court agreed, holding that Tug Hill could not use an arbitration provision or a forum selection clause in a contract with Luna's LLC to dismiss or transfer a suit he brought individually. For the reasons explained below, we agree.

## I.

Tug Hill is "a Texas-based oil and natural gas exploration and production company." *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 282 (4th Cir. 2023). Luna worked as a safety coordinator in Tug Hill's West Virginia operations from October 2021 until August 2023. But Tug Hill did not hire Luna directly. Instead, GryphonESP, LLC—a staffing

2

company that provides its clients with independent contractors who work on a temporary basis—supplied him to Tug Hill.

Luna's relationship with Gryphon was documented in an Independent Contractor Agreement between The Texan and Gryphon. The Agreement explained in its opening paragraph that it was "entered into . . . between GryphonESP, LLC (the 'Company') and The Texan LLC ('Contractor')." J.A. 31. It then provided that "Company [defined earlier as Gryphon] is placing Contractor [defined earlier as The Texan] with an operator client of Company." J.A. 32. The Agreement also stated that "any and all legal claims . . . that Contractor may have against the Company, its parents, subsidiaries, successors or affiliates or clients or one of its employees or agents, arising out of or related to this Agreement . . . will be decided by a single arbitrator through the American Arbitration Association in Harris County, Texas through final and binding arbitration only." J.A. 40–41. And those claims included "individual worker disputes regarding payment of compensation, hours of work, expense reimbursement, absences, harassment, discrimination, retaliation and termination . . . relating to work performed by Contractor." J.A. 41.

After Luna's placement with Tug Hill ended, he sued Tug Hill, alleging it violated the Fair Labor Standards Act (FLSA) by paying him a day rate without paying him overtime wages.[1] Tug Hill moved to transfer venue or, in the alternative, to compel

---

[1] Luna also styled his suit as a collective action under the FLSA, which permits plaintiffs to bring an action against "any employer . . . on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because Luna has not sought collective action certification thus far and has not filed notice of any other opt-in plaintiffs, the district court could not address those allegations, and thus we do not address them either.

arbitration and dismiss Luna's complaint. It argued that the arbitration provision in the Agreement was valid and enforceable against Luna.

The district court denied Tug Hill's motion. It explained that Tug Hill was unable to enforce the Agreement's arbitration provision against Luna because Luna was not a party to the Agreement.[2] This appeal followed.[3]

## II.

Tug Hill argues on appeal that Luna executed the Agreement on his own behalf—not on behalf of The Texan. So, Tug Hill insists, Luna must arbitrate his claims against it because he signed the Agreement—which includes an applicable arbitration provision—in his individual capacity. We disagree. The Agreement is clear—Luna signed the Agreement as an agent for The Texan, a disclosed principal.

## A.

---

[2] The district court also concluded that Tug Hill could not enforce the Agreement as a third-party beneficiary because the Agreement lacked "a clear expression of the intent" to make Tug Hill a third-party beneficiary. J.A. 71. But because we hold that Luna signed the Agreement for a disclosed principal and thus is not personally a party to the Agreement, we need not address this third-party beneficiary argument.

[3] Tug Hill filed a timely interlocutory appeal of the district court's order denying its motion to transfer venue or compel arbitration. The district court had jurisdiction under 28 U.S.C. § 1331 because Luna alleges violations of the FLSA, a federal law. 9 U.S.C. § 4; *see Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009); *see also Badgerow v. Walters*, 596 U.S. 1, 5 (2022) (explaining that the look-through approach to jurisdiction applies to motions to compel, but not "requests to confirm or vacate arbitral awards"). Further, we have jurisdiction over the appeal under 9 U.S.C. § 16(a), which permits interlocutory appeals of denials of motions to compel arbitration. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023).

First, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *see Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (reiterating that "arbitration agreements [are] as enforceable as other contracts, but not more so" (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967))). Further, the question of whether a party is individually bound by a contract or whether they have signed for a disclosed principal is a question of state contract law. *See Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001); *see also Rogers*, 76 F.4th at 285–86. Here, the Agreement and any dispute arising out of it is governed by Texas law.

Under Texas law, "a person who signs a contract on behalf of a disclosed principal is not a party to the contract and is generally not liable under it." *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 455 (Tex. App. 2023); *see Elgohary v. Herrera*, 405 S.W.3d 785, 790–91 (Tex. App. 2013) (stating that "signing a contract in a representative capacity does not bind the agent personally to the contract"). Also, "[i]n deciding whether an agent is personally liable on a contract the agent signed, both the signature and the body of the contract should be considered." *Plan B Holdings*, 681 S.W.3d at 454 (explaining that "a signatory will not be held personally liable where the body of the contract indicates that the signature was in a representative capacity"). And Texas courts have embraced the Restatement (Second) of Agency, which provides that a contract "is interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency."

5

*Id.* at 455 (quoting the Restatement (Second) of Agency § 156 (Am. L. Inst. 1958)). Last, for an agent who has signed for an otherwise-disclosed principal to be personally liable on the contract, that agent must "expressly agree[] to become a party." *Id.*

Here, both the opening paragraphs of the contract and the signature block make clear that the parties intended for Luna to sign the Agreement as an agent for The Texan, a disclosed principal, not in his individual capacity. The Agreement begins by stating that it is an "Agreement" between Gryphon, "the 'Company,'" and The Texan LLC, "Contractor." J.A. 31. And it concludes by saying: "Company and Contractor have caused this Agreement to be executed by their duly authorized representatives . . . ." J.A. 45.

Then, the Agreement contains the following signature block:

EACH INTENDING TO BE BOUND TO THE OTHER, IN WITNESS WHEREOF, Company and Contractor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

Agreed and accepted:

COMPANY
GryphonESP, LLC

By _____
[Signature]
Printed Name: Jason Anderson
Title: Executive VP of Operations
Date of Signature: 7/1/2022

CONTRACTOR
Signature: _____
Printed Name: Randy
Title: EHS coordinator
Date of Signature: 6/30/2022

J.A. 45. As is apparent, the signature block begins with "CONTRACTOR," which—once again—the Agreement defines to mean The Texan. Next to "CONTRACTOR" are the

6

words "DocuSigned by." And under that, Luna signed his name. *Id.* So, all signs point to Luna signing as The Texan's agent.

**B.**

Undeterred, Tug Hill makes two arguments. First, it insists that the signature block indicates Luna signed the Agreement in his individual capacity. It points out that Luna's signature is not immediately preceded by the name of "The Texan" followed by the word "by" or other similar language and is followed by his personal information. Second, it argues that the body of the Agreement contains some language that could be read to refer to individuals rather than a corporate entity. Both arguments fail.

**1.**

As to the first point—the presence or absence of the word "by" or "agent of" before Luna's signature—Tug Hill is wrong for two reasons. First, contrary to Tug Hill's assertion, the word "by" precedes Luna's signature. Again, next to "CONTRACTOR" are the words "DocuSigned by," immediately above Luna's signature.[4] J.A. 45.

But second, Texas law does not require either magic words or, for that matter, a magic format. It looks to the agreement as a whole—the signature block "and the body of the contract"—when evaluating whether someone is personally bound. *Plan B Holdings*, 681 S.W.3d at 454. Here, the signature block—together with the rest of the contract— makes clear that Luna was signing for a disclosed principal, and not in his individual

---

[4] The record before us does not contain the specifics of this contract's execution. But we recognize that it was signed using DocuSign software, and that this particular language—"DocuSigned by"—was likely inserted automatically by that software program. However, the parties do not dispute that this language is part of the Agreement.

7

capacity. The final page of the Agreement explains that the signers are the "duly authorized representatives" of the Company and the Contractor. J.A. 45. Also, the Agreement earlier defined the Contractor as The Texan, LLC. And the fact that Luna's title of "EHS Coordinator," address, contact information, driver's license number and date of birth accompany his signature is unremarkable given that the Agreement clearly says that the "Contractor" is "The Texan" and that the person signing the Agreement is doing so as the Contractor's authorized representative. J.A. 31, 45.

Tug Hill also overstates the Restatement (Second) of Agency's support for its position. A comment to section 156 of the Restatement, titled "Instrument[s] in Which Fact of Agency or Name of Principal Appears," explains, first, that "[any] signature or description from which it appears that the parties intend that the principal and not the agent shall be a party" will "creat[e] an inference that the principal is a party." Restatement (Second) of Agency § 156 cmt. a. It then explains that the inference that an agent is signing for a principal can be created "by the agent's name preceded by a preposition such as 'by' or 'per.'" *Id.* And finally, it says "[i]f the name of the principal is followed by the name of the agent without more, the arrangement of the names or the way in which the promise is made may indicate that the agent is not a party." *Id.* In other words, the Restatement indicates that there are a number of ways parties can indicate an individual is signing for a principal. And it explains that the total absence of any reference to the principal can create an inference "that the agent is a party." *Id.*

But that is not what we have here. Instead, we have an explanation of who the parties are that explicitly references The Texan; we have subsequent language explaining that the

8

signatures belong to the parties' duly-authorized representatives; and we have the signatures themselves following the words "DocuSigned by"—all of which makes clear that Luna is signing for a disclosed principal, not in his individual capacity.

**2.**

As to Tug Hill's second argument, the body of the contract does not contradict what the signature block indicates—that Luna signed the Agreement on behalf of The Texan, not individually. Tug Hill contends that the Agreement uses "he" at times to describe the Contractor. But the Agreement uses "his/her/its" to refer to the Contractor in its opening paragraphs, indicating that when those pronouns are used later, they refer to the Contractor. J.A. 31. Tug Hill also claims that references to "felony conviction[s]," "theft," "personal activities," "employee benefits" and a non-compete agreement show that Luna meant to be personally bound. J.A. 32–34, 38–39, 42–43. But corporate entities can be convicted of crimes, can commit theft, can have agents who engage in personal activities on the job and can be parties to noncompete agreements. And even if some of these references might apply more to individuals than entities, such boilerplate language does not outweigh the parties' clear explanation, at the beginning and end of the Agreement, that Luna was signing for The Texan and not for himself. *See Plan B Holdings*, 681 S.W.3d at 456 (explaining that "boilerplate use of the term 'you'" did not "overcome[] the explicit recitation[] of who is and is not a party to the agreements").

In sum, the signature page and the Agreement's opening paragraph explain that the Contractor is The Texan and that Luna is the Contractor's "duly authorized representative[]." J.A. 31, 45. The body of the Agreement does not present "more than a

9

scintilla of evidence" to the contrary. *Plan B Holdings*, 681 S.W.3d at 456. And there is no

other evidence that Luna expressly agreed to become a party to the Agreement. So, we hold

that Luna signed for a disclosed principal and thus is not personally bound by the

Agreement.[5]

## III.

Because Luna is not individually a party to the Agreement, the district court's order

is,

---

[5] Tug Hill also insists that the district court erred in declining to address its argument that Luna is The Texan's alter-ego—and thus is bound to the Agreement because he and The Texan are one and the same. But Tug Hill made that argument for the first time in its reply brief below. Under our precedent, "new arguments cannot be raised in a reply brief" before the district court. *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) (stating that "in failing to consider a reply brief, the district court did not fail to consider all relevant [arguments] properly before it"). And even in its reply brief, Tug Hill made an alter-ego argument without asserting it as a cause of action or even pointing to evidence of undercapitalization and insufficient insurance, the statutory prerequisites to veil-piercing in West Virginia, whose law would apply to this issue since The Texan is a West Virginia limited liability company. *See Kubican v. The Tavern, LLC*, 752 S.E.2d 299, 311 (W. Va. 2013) (piercing the corporate veil is a heavily "fact based" inquiry that "must be applied to LLCs on a case-by-case basis"); *see also* W. Va. Code § 31B-3-303(d) (providing that a court cannot even apply the corporate veil piercing analysis unless it first determines that "(1) the company is not adequately capitalized for the reasonable risks of the corporate undertaking and (2) the company does not carry liability insurance coverage for the primary risks of the business, with minimum limits of $100,000 liability insurance, or such higher amount as may be specifically required by law"); *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018) (explaining that "[t]he law of the state in which an entity is incorporated generally governs the question of whether a court may pierce an entity's veil"). Thus, the district court was not required to address Tug Hill's alter-ego theory and did not abuse its discretion by choosing not to address it. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (explaining that district courts have discretion to consider or not consider arguments "raised for the first time on reply").

*AFFIRMED.*[6]

---

[6] Neither the parties nor the district court addressed whether Luna can bring an FLSA claim individually after entering into a temporary employment agreement as an LLC, or whether his LLC could bring an FLSA suit if Luna cannot do so individually in this case. Since those issues are not before us, we express no view on them here.