IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 18-0040

_____

FILED

March 15, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JAMES A. DAILEY, III, NICOLE DAILEY,
TRAVIS A. HILL, AND SCARLETT J. HILL,
Plaintiffs Below, Petitioners

v.

AYERS LAND DEVELOPMENT, LLC; A AND A HOMES, INC.;
AYERS BUILDERS, INC.; ROGER E. AYERS; JERRY A. AYERS;
RJM HOLDINGS, LLC; FRYE CONSTRUCTION, INC.; AND MICHAEL E. FRYE,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Berkeley County
Honorable Christopher C. Wilkes, Judge
Civil Action No. 15-C-59

REVERSED AND REMANDED
_____

Submitted: February 13, 2019
Filed: March 15, 2019

Susan R. Snowden, Esq.
Jackson Kelly PLLC
Martinsburg, West Virginia
Attorney for Petitioners

J. Victor Flanagan, Esq.
Matthew R. Whitler, Esq.
Benjamin P. Warder, Esq.
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
Martinsburg, West Virginia
Attorneys for Ayers Land Development, LLC; A and A Homes, Inc.; Ayers Builders, Inc.;
         Roger E. Ayers; and Jerry A. Ayers

Christopher C. Luttrell, Esq.
Luttrell LC
Martinsburg, West Virginia
Attorney for Frye Construction, Inc., and Michael E. Frye

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

2.      "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."  Syl. Pt. 3, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

3.      "'A joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied.' Syl. pt. 2, *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987)."  Syl. Pt. 5, *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000).

4.      "'While, legally speaking, a corporation constitutes an entity separate and apart from the persons who own it, such is a fiction of the law introduced for purpose of convenience and to subserve the ends of justice; and it is now well settled, as a general

i

principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences.' Syl. pt. 10, *Sanders v. Roselawn Memorial Gardens, [Inc.,]* 152 W.Va. 91, 159 S.E.2d 784 (1968)." Syl. Pt. 2, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986).

5.      "W.Va. Code § 31B-3-303 (1996) (Repl. Vol. 2009) permits the equitable remedy of piercing the veil to be asserted against a West Virginia limited liability company." Syl. Pt. 5, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013).

6.      "'[T]o "pierce the corporate veil" in order to hold the shareholder(s) actively participating in the operation of the business personally liable . . . , there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement).' Syllabus point 3, in part, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986)." Syl. Pt. 6, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013).

7.      "To pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of

ii

the individual member(s) or managers(s) no longer exist and (2) fraud, injustice, or an inequitable result would occur if the veil is not pierced." Syl. Pt. 7, in part, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013).

8.      "The propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment. Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence." Syl. Pt. 6, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986).

9.      "The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders." Syl. Pt. 3, *S. Elec. Supply Co. v. Raleigh Cty. Nat'l Bank*, 173 W.Va. 780, 320 S.E.2d 515 (1984).

10.     "[T]he failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business may not be a ground for imposing personal liability on the member(s) or manager(s) of the company." Syl. Pt. 7, in part, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013).

**HUTCHISON, Justice:**

Petitioners James and Nicole Dailey and Travis and Scarlett Hill appeal the December 19, 2017, order of the Circuit Court of Berkeley County certifying as final the prior orders that granted summary judgment to the respondents, Ayers Land Development, LLC; A and A Homes, Inc.; Ayers Builders, Inc.; Roger E. Ayers and Jerry A. Ayers (hereinafter collectively "Ayers respondents"); Frye Construction, Inc., and Michael E. Frye, in this civil action arising out of the modification of covenants pertaining to a residential subdivision developed by RJM Holdings, LLC ("RJM").[1] In this appeal, the petitioners assert several assignments of error but primarily contend that the circuit court erred by granting summary judgment because genuine issues of material fact exist regarding whether the respondents were engaged in a joint venture with RJM to develop the subdivision and whether the veils of the respondent corporations and limited liability companies should be pierced to hold Roger Ayers, Jerry Ayers, and Michael Frye, personally liable.

Upon consideration of the parties' briefs and oral arguments, the submitted record, and the applicable authorities, this Court finds merit to the petitioners' arguments.

---

[1] Although RJM is named as a respondent in this appeal, the circuit court rulings at issue do not address any of the petitioners' claims against RJM. All of the petitioners' claims against RJM remain pending below. Accordingly, reference to the "respondents" in this opinion means the Ayers respondents, Frye Construction, and Michael E. Frye, collectively.

1

Accordingly, for the reasons set forth below, the circuit court's final order is reversed, and this case is remanded for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

Respondents Roger Ayers and Jerry Ayers are brothers who are engaged in the business of real estate development and construction of residential homes. To facilitate their business, they have formed multiple limited liability companies and corporations including Ayers Holdings, LLC, whose sole members are Roger Ayers and Jerry Ayers; Ayers Land Development, LLC, whose sole members are Jerry Ayers and his wife, Deborah Ayers; Ayers Builders, Inc., with Jerry Ayers as president and his wife, Deborah as vice president; and A and A Homes, Inc., with Roger Ayers as president and Jerry Ayers as vice president. Ayers Holdings and Ayers Land Development are holding companies for real estate; Ayers Builders and A and A Homes are home contractors. Michael Frye is also a real estate developer and home builder. His business is Frye Construction, Inc.

In November 2004, Ayers Holdings and Michael Frye formed RJM for the purpose of developing a 117-acre tract of land in Berkeley County into a residential subdivision known as Brookside. Michael Frye has a fifty percent interest in RJM, and Ayers Holdings owns the other fifty percent. To finance the project, RJM secured a $2.4 million dollar bank loan, which Roger Ayers, Jerry Ayers and Michael Frye personally guaranteed.

2

On May 30, 2007, RJM recorded a series of final plats for Brookside that created thirty-eight individual single family lots at least one acre in size with common areas, shared roads, and a parcel for future development. Brookside was marketed as a "premier, upscale subdivision." To that end, RJM recorded a "Declaration of Covenants, Conditions and Restrictions for Brookside" in 2007 ("the 2007 Covenants") in the Berkeley County Clerk's Office. Pertinent to this case are the following requirements for Brookside homes set forth in the 2007 Covenants:

> All one-story Dwellings shall contain a minimum of 2,800 square feet. All multiple-story Dwellings shall contain a minimum of 3,000 square feet, with at least 1,500 square feet on the first floor. Dimensions stated shall be exterior wall dimensions excluding basements, garages, decks, porches, eaves and other similar extension and overhangs.
>
> The exposed surface of all exterior walls of any building constructed upon any Lot may be clad with only the following materials: brick, stone, solid wood, or stucco. Without limitation of the foregoing, no vinyl or aluminum siding shall be permitted on any exterior wall, and no concrete shall be exposed.

On June 29, 2007, Travis and Scarlett Hill purchased Lot No. 17 in Brookside for $154,900. They were provided a copy of the 2007 Covenants, but they have yet to build a home on the lot they purchased. James and Nicole Dailey purchased Lot No. 18 in Brookside for $154,900 on July 6, 2007. They began construction of a home on their lot in August 2013 in accordance with the 2007 Covenants.

3

Between 2008 and 2011, RJM only sold one lot in Brookside. In 2010, RJM began discussing amending the 2007 Covenants to lessen the restrictive uses in an effort to sell more lots. On April 16, 2013, RJM executed a Supplementary Declaration of Covenants, Conditions, and Restrictions ("the 2013 Covenants") for Brookside which amended the 2007 Covenants by decreasing the required minimum square footage for homes and permitting the use of vinyl siding.[2] According to the petitioners, they were not informed that the 2007 Covenants were going to be amended. In fact, the Hills maintain that they were never informed by RJM or any of the respondents of the amendments to the covenants prior to filing their complaint. The Daileys have stated that they received the 2013 Covenants by email without any explanation on August 1, 2014, after leaving a

---

[2] The 2013 Covenants amended the requirements for residence sizes as follows:

> All one story Dwellings shall contain a minimum of 1,800 square feet. All multiple-story Dwellings shall contain a minimum of 2000 square feet with at least 1000 square feet on the first floor. Dimensions stated shall be exterior wall dimensions excluding basements, garages, decks, porches, eaves and other similar extensions and overhangs.

With respect to exterior materials, the 2013 Covenants provided as follows:

> Except as provided herein, the exposed surface of the exterior walls of any building constructed upon any Lot may be clad with only the following materials: brick, stone, solid wood, or stucco. Notwithstanding the foregoing, vinyl siding shall be permitted on the entire building. Aluminum siding is not permitted on any surface. Furthermore, the side and rear foundation may be exposed but must be painted to match the exterior of the building. The foundation of the front of the building must remain covered with brick, stone, solid wood, or stucco.

4

voicemail for the respondents inquiring about homes being constructed in Brookside that did not comply with the 2007 Covenants.

The petitioners contend that at least three homes have been built in Brookside that fail to comply with the 2007 Covenants. RJM has acknowledged that the houses on Lots 14 and 15 do not comply with the 2007 Covenants. The record shows that A and A Homes built the home on Lot 14. Michael Frye and Frye Construction completed the excavation for Lot 14, and Roger Ayers was the sewer installer. While the home on Lot 14 was being built, Frye Construction was also doing excavation work for the Daileys. According to the Daileys, they asked Michael Frye about the square footage of the home being constructed on Lot 14. The Daileys contend that Michael Frye "evaded the question" and never mentioned that the 2007 Covenants had been amended.

In 2015, separate complaints were filed by the Daileys and the Hills against RJM and Ayers and Ayers Holdings alleging, inter alia, civil conspiracy, fraud and breach of the covenants. The cases were consolidated by the circuit court. In August 2016, the petitioners sought leave to amend their complaints to add additional defendants, including the Ayers respondents, Michael Frye, and Frye Construction.[3] The request to amend was

_____

[3] The amended complaint also named as defendants all other persons and entities owning real property in Brookside. The circuit court ordered the petitioners to name these property owners as defendants, deeming their inclusion necessary for a complete adjudication of the petitioners' declaratory judgment claims concerning the 2013 Covenants. These defendants are not parties to this appeal.

5

granted, and on January 18, 2017, the petitioners filed "Plaintiffs' Consolidated Amended Verified Complaint." The petitioners sought declaratory judgment, asking the court to find that the 2013 Covenants "destroy[] the Community Standard and [are] void *ab initio*." In addition, the petitioners sought to recover monetary damages for the actions taken by RJM and the respondents in executing the 2013 Covenants. The petitioners alleged that the respondents were members of a joint venture with RJM making them "jointly and severally liable for all acts and omissions of individual co-venturers as they relate to Brookside." The petitioners also sought to pierce the veil of the respondent corporations and limited liability companies to hold Roger Ayers, Jerry Ayers, and Michael Frye personally liable.

On April 19, 2016, Ayers and Ayers Holdings filed a motion for summary judgment seeking dismissal of the claims brought against it because of its status as a member of RJM. The circuit court granted the motion on February 13, 2017, concluding, "Any involvement by Defendant Ayers and Ayers Holding, LLC in enacting and signing documents was not done as a separate limited liability company entity, but rather in its official capacity as a member of RJM[.]" The petitioners have not appealed this order.[4]

---

[4] During oral argument of this case, the petitioners' attorney stated that the circuit court had failed to include the necessary language in the order granting summary judgment to Ayers and Ayers Holdings to make it a final appealable order. Accordingly, the decision remains as an interlocutory ruling that is not appealable at this juncture. *See* W.Va. R. Civ. Proc. 54(b); Syl. pt. 3, in part, *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003) ("An otherwise interlocutory order that is not expressly certified as final by using the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure remains interlocutory so long as the affected party does not seek an appeal.").

6

In September 2017, the parties began filing additional motions for summary judgment. Discovery was continuing, and a dispute arose between the petitioners and the Ayers respondents regarding withheld communications and other documents identified in a privilege log. The petitioners filed a motion to compel and sought an in-camera review of the withheld materials, asserting that the information contained therein supported their allegation that the Ayers companies were involved in Brookside. Despite the discovery dispute, the circuit court granted summary judgment on November 7, 2017, through separate orders to (1) the Ayers respondents; (2) Michael Frye; and (3) Frye Construction and dismissed them from the case. The circuit court then entered an order on November 15, 2017, dismissing the petitioners' motion to compel as moot. Finally, on December 19, 2017, the circuit court entered its "Order Granting Motion to Certify as Final the Court's Orders Granting Summary Judgment to Select Defendants." This appeal followed.

## II. Standard of Review

We apply a de novo review to a circuit court's grant of summary judgment. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). It has long been established that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). This Court has explained that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for

7

trial." *Painter,* 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 3.  Therefore, "we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995).  Because

> [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [s]ummary judgment should be denied even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.

*Id.* (internal quotations and citations omitted).  With these standards in mind, we consider whether the circuit court erred in granting summary judgment to the respondents.

### III.  Discussion

As set forth above, the petitioners argue that the circuit court erred by granting summary judgment because genuine issues of material fact exist with regard to whether the respondents were engaged in a joint venture with RJM to develop Brookside and whether the corporate veils of the respondent businesses should be pierced to hold Roger Ayers, Jerry Ayers and Michael Frye personally liable.  We will separately consider these issues below, followed by a discussion regarding the other assignments of error asserted by the petitioners.

8

*A.  Joint Venture*

The petitioners first contend that the circuit court erred by finding that they failed to establish the existence of a joint venture between the respondents and RJM to create, develop, and market Brookside.  This Court has held that

> "[a] joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Syl. pt. 2, *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987).

Syl. Pt. 5, *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000).  This Court has also recognized that "[m]embers of a joint venture are . . . jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers." *Id.* at 678, 535 S.E.2d at 743.

The petitioners contend that RJM is merely a "shell company" and that it could not have developed Brookside without the contributions and efforts of the respondents, which is the essence of a joint venture.  To support their claim that the respondents were engaged in a joint venture with RJM to develop Brookside, the petitioners produced evidence showing that the Ayers respondents were involved in the marketing of the Brookside lots.  In that regard, A and A Homes advertised Brookside on its websites and provided its own contact information for sales inquiries; A and A Homes exchanged communications regarding Brookside with realtors concerning lot sales and had

9

a listing agreement with one realtor; and A and A Homes listed Brookside properties in its name with realtors to try to "help RJM move the lots." In addition, the petitioners provided evidence that A and A Homes completed applications for names of roads within Brookside that were submitted to the county planning commission for approval. There was also evidence produced showing that Frye Construction performed the infrastructure work for Brookside at a cost of more than $500,000 and that A and A Homes and other Ayers respondents transferred funds to RJM to pay bills on a regular basis including the excavation costs paid to Frye Construction. The petitioners also presented evidence that the respondents were involved in the construction of the home on Lot 14 of Brookside, which does not comply with the 2007 Covenants. Finally, there was evidence showing that RJM uses the physical office location and staff of A and A Homes for RJM's day-to-day operations although there is no agreement to do so and RJM does not pay rent. The petitioners maintain that this evidence created a genuine issue of material fact regarding the existence of a joint venture between the respondents and RJM to preclude summary judgment.

Characterizing the evidence produced by the petitioners as "random facts," the respondents maintain that the circuit court's grant of summary judgment was proper because the petitioners were unable to provide any evidence with respect to the essential elements of a joint venture, which as discussed in *Armor,* are an agreement to share profits and joint management and control of the business enterprise. 207 W.Va. at 678-80, 535 S.E.2d at 743-45. *Armor* involved a legal malpractice suit brought by the clients of an

10

attorney who served as local counsel for their out-of-state attorney in their underlying products liability action. The plaintiffs asserted that their local counsel and out-of-state attorney were engaged in a joint venture to represent them, and they sought to hold their local counsel liable for the alleged malpractice committed by their out-of-state attorney. Finding no evidence to show that the respondent local attorney had agreed to undertake active management and control of his clients' lawsuit in federal court or sufficient evidence of an agreement to share in the profits and losses of the joint representation, we upheld the circuit court's grant of summary judgment to the local attorney because the appellants did not "raise a triable issue of fact as to whether a joint venture existed." *Id.* at 746, 535 S.E.2d at 681. Although we upheld the grant of summary judgment in *Armor*, we noted that "[w]hether or not a joint venture exists is normally a question to be answered by the trier of fact." *Id.* at 678, 535 S.E.2d at 743. Indeed, this Court has recognized that "'a plaintiff has a right to a jury trial upon the factual issues to determine whether a joint venture existed." *Bowers v. Wurzburg*, 207 W.Va. 28, 37, 528 S.E.2d 475, 484 (1999) (quoting *Lasry v. Lederman*, 147 Cal.App.2d 480, 305 P.23d 663 (1957)).

Unlike the appellants in *Armor* who essentially produced no evidence to support their joint venture theory other than the respondent attorney's agreement to act as local counsel, the petitioners here have presented evidence that indicates the respondents took an active role in marketing the Brookside lots, transferred funds to RJM so that it could pay expenses, and performed construction work. This Court has recognized that contributions of "property, money, efforts, skill [and] knowledge," raise a jury question

11

regarding the existence of a joint venture. *Sipple v. Starr*, 205 W.Va. 717, 725, 520 S.E.2d 884, 892 (1999) (citation omitted).

In *Sipple*, the administrator of the estate of a customer who was shot and killed by a convenience store employee brought suit against the convenience store, its owner, and the gasoline supplier contending they were liable for the actions of their employee. One of the administrator's theories of liability was that the defendants were engaged in a joint venture to operate the convenience store. This Court reversed the circuit court's grant of summary judgment to the gasoline supplier on the administrator's joint venture theory despite a lack of evidence that the gasoline supplier received any profit from the convenience store's grocery and beer sales. *Id.* at 725, 520 S.E.2d at 892. Rejecting the gasoline supplier's contention that there was no joint venture because there was no direct sharing of profits, this Court explained that "intrinsic to a joint venture[] is the concept of mutual efforts to promote the business, the success of which would accrue to the benefit of all parties[.]" *Id.* Elaborating further, we stated:

> To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise.

*Id.* (quoting *Pownall v. Cearfoss*, 129 W.Va. 487, 497-98, 40 S.E.2d 886, 893 (1946)). Because the administrator produced evidence that the gasoline supplier provided property in the form of gas pumps and other equipment as well as "skill and knowledge in the sale

12

of gasoline," we concluded that summary judgment had been improvidently granted and that a jury should decide whether a joint venture existed. *Id.* at 725, 520 S.E.2d at 892; s*ee also Herrod v. First Republic Mortg. Corp., Inc.*, 218 W.Va. 611, 621, 625 S.E.2d 373, 383 (2005) (concluding "it should be up to a jury to determine whether there is sufficient evidence of a joint venture" between mortgagee and its assignee in predatory lending case); *Bowers v. Wurzburg*, 207 W.Va. 28, 38, 528 S.E.2d 475, 485 (1999) (finding that "percentage clause" in commercial lease raised question of fact regarding existence of joint venture between convenience store lessor and lessee).

Given that the petitioners have produced substantial evidence that the respondents made contributions to promote the development of Brookside including marketing the lots, providing capital to pay RJM's expenses, and performing actual construction work, we find that the circuit court erred by granting summary judgment to the respondents on the petitioners' joint venture theory. As noted in *Sipple*, "[w]e are by no means suggesting that just any mutually beneficial commercial relationship . . . rises to the level of a joint venture." 205 W.Va. at 725, 520 S.E.2d 892. However, based on the record before us, we find that the petitioners have raised sufficient genuine issues of material fact regarding the existence of a joint venture between the respondents and RJM to preclude summary judgment.

13

*B. Piercing the Corporate Veil*

The petitioners also argue that the circuit court erred by finding that they failed to produce sufficient evidence to pierce the veil of the respondent corporations and limited liability companies to hold Jerry Ayers, Roger Ayers, and Michael Frye personally liable. This Court has recognized that "[a] corporate shield may . . . be 'pierced' to subject a sole shareholder to liability for corporate acts or to make a corporation liable for behavior of another corporation within its total control." *S. Elec. Supply Co v. Raleigh Cty. Nat'l Bank*, 173 W.Va. 780, 787, 320 S.E.2d 515, 522 (1984). As we have explained:

> While, legally speaking, a corporation constitutes an entity separate and apart from the persons who own it, such is a fiction of the law introduced for purpose of convenience and to subserve the ends of justice; and it is now well settled, as a general principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences." Syl. pt. 10, *Sanders v. Roselawn Memorial Gardens, [Inc.,]* 152 W.Va. 91, 159 S.E.2d 784 (1968).

Syl. Pt. 2, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986). Likewise, we have acknowledged that "W.Va. Code § 31B-3-303 (1996) (Repl. Vol. 2009) permits the equitable remedy of piercing the veil to be asserted against a West Virginia limited liability company." Syl. Pt. 5, *Kubican v. The Tavern, LLC*, 232 W.Va. 268, 752 S.E.2d 299 (2013). Whether the business is a corporation or a limited liability company, the same two-part test is applied to determine whether the veil may be pierced. As set forth in syllabus points six and seven, respectively, of *Kubican*, there is a "disregard of the formalities requirement" and a "fairness requirement":

14

"[T]o 'pierce the corporate veil' in order to hold the shareholder(s) actively participating in the operation of the business personally liable . . . , there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement)." Syllabus point 3, in part, *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986).

To pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of the individual member(s) or managers(s) no longer exist and (2) fraud, injustice, or an inequitable result would occur if the veil is not pierced.

*Kubican*, 232 W.Va. at 270, 752 S.E.2d at 301, syl. pts. 6 & 7, in part.

Application of the two-part test to determine whether to pierce the veil of a corporation or a limited liability company requires a fact-driven analysis that is specific to each case. Recognizing the multitude of considerations involved and the close scrutiny of the actions of the parties that is required, this Court has made clear that "decisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details." *S. Elec. Supply,* 173 W.Va. at 787, 320 S.E.2d at 523. Likewise, "the analysis necessary to [pierce the veil of an LLC] is fact based and must be applied to LLCs on a case-by-case basis[.]" *Kubican*, 232 W.Va. at 280, 752 S.E.2d at 311. To make the determination, we have outlined some of the relevant factors to be considered, which include:

15

(1) commingling of funds and other assets of the corporation with those of the individual shareholders;

(2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);

(3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, such as formal approval of the stock issue by the board of directors;

(4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;

(5) failure to maintain corporate minutes or adequate corporate records;

(6) identical equitable ownership in two entities;

(7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);

(8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;

(9) absence of separately held corporate assets;

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;

(18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;

(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

*Laya*, 177 W.Va. at 347-48, 352 S.E.2d at 98-99; *Kubican*, 232 W.Va. at 281, 752 S.E.2d at 312.

This Court has observed that

[e]xamination of the numerous relevant factors in a 'totality of the circumstances' test provides a more enlightening analysis than merely applying metaphors, like "simulacrum," "alter ego," "instrumentality," etc., to describe the unity of the shareholder(s) and the corporation justifying, where equitable, the piercing of the corporate veil in the case.

17

*Laya*, 177 W.Va. at 348, 352 S.E.2d at 99. In addition, this Court has recognized that "this evidence must be analyzed in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to 'pierce the veil.'" *S. Elec. Supply,* 173 W.Va. at 788, 320 S.E.2d at 523. Accordingly, we have held that "[t]he propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment. Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence." *Laya*, 177 W.Va. at 344, 352 S.E.2d at 94, syl. pt. 6.

In this case, the petitioners have produced evidence that the respondents and RJM had no operating agreements with regard to the use of the same personnel, office space, equipment, phone lines, and marketing materials. In addition, the petitioners established that funds were transferred from the various respondents to RJM to pay its expenses. In fact, some of the funds contributed by one respondent were used to pay another respondent to do the infrastructure work for RJM. We, of course, recognize that "common ownership or common management without evidence of fraudulent conduct, total control, or a 'dummy' corporation [does not] justify piercing the corporate veil." *S. Elec. Supply*, 173 W.Va. at 789, 320 S.E.2d at 524. Indeed, "[t]he law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders." *Id.* at 781, 320 S.E.2d at 516, syl. pt.3. We have also held that "the failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business

18

may not be a ground for imposing personal liability on the member(s) or manager(s) of the company." *Kubican*, 232 W.Va. at 270, 752 S.E.2d 301, syl. pt. 7, in part; *see also* W.Va. Code § 31B–3–303(b) (1996). However, based on the record before us and given our express recognition of the fact-based nature of determining whether to "pierce the veil," we find this issue is a matter for the jury, and the circuit court erred by granting summary judgment.

### C. Other Assignments of Error

The petitioners have also assigned error to the circuit court's dismissal of all their other claims against the respondents based on its finding that the petitioners failed to prove the existence of a joint venture. In their amended complaint, the petitioners asserted the following additional claims against RJM and the respondents: cloud on title; breach of restriction, condition and covenants; civil conspiracy; actual and/or constructive fraud; slander of title; promissory/equitable estoppel; and breach of contract for the failure to pave the Daileys' driveway. The petitioners argue in this appeal that the circuit court's finding that they failed to present sufficient evidence of a joint venture between RJM and the respondents was not dispositive with respect to all of their other causes of action and that the circuit court erred by dismissing these claims against the respondents without providing separate findings of fact and conclusions of law. To the extent that the circuit court's grant of summary judgment to the respondents on all of the petitioners' other claims was based upon its finding that the petitioners had failed to establish the existence of a joint venture between RJM and respondents, we summarily reverse the grant of summary judgment to

19

the respondents on those causes of action. Given our decision that genuine issues of material fact exist precluding summary judgment on the petitioners' joint venture claim, the circuit court's reasoning for dismissing the other claims is no longer sound.

As the petitioners' note, the only cause of action the circuit court separately addressed, aside from the joint venture and piercing the veil claims, was the petitioners' allegation of fraud against Roger Ayers and Jerry Ayers. In that regard, the circuit court found that the petitioners' fraud claim could not be maintained against Roger Ayers and Jerry Ayers because "the record . . . shows no evidence of intent to defraud the Plaintiffs, but instead clearly indicates that the changes to the [2007 Convenants] that were enacted by RJM in 2013 were due to the changes in the economy and the crash of the real estate market." The circuit court made no such finding, however, with respect to the other respondents. Rather, in granting summary judgment to Frye Construction, the circuit court dismissed all claims asserted by the petitioners based upon its finding that the joint venture claim could not be maintained. Summary judgment was granted to Michael Frye on all of the petitioners' claims based on the circuit court's finding that "he had not acted outside the scope of his role as a member of [RJM] throughout the relevant underlying events."

Critically, a review of the amended complaint shows the petitioners' fraud allegations were not limited to the actions of RJM and the respondents when Brookside was formed. The petitioners also asserted that RJM and the respondents committed fraud when they "took action to specifically conceal from [the Daileys] that they were creating

20

and filing the 2013 Declaration in order to induce [them] to proceed forward with plans to build their large estate home which exceeded the requirements as established by the 2007 [Covenants]." Because the circuit court did not fully address all of the petitioners' allegations and did not make any separate findings with respect to the petitioners' allegations of fraud against the other respondents, we find that the circuit court's grant of summary judgment on this issue must be reversed. A summary judgment order that fails to set forth sufficient findings of fact and conclusions of law does not permit meaningful appellate review. *See syl., Hively v. Merrifield*, 212 W.Va. 804, 575 S.E.2d 414 (2002) (holding that circuit court's grant of summary judgment must set forth factual findings sufficient to permit appellate review). Moreover, because we have found that genuine issues of material fact exist with respect to the conduct of the respondents and the use of the various business entities to develop Brookside, the viability of all of the petitioners' causes of action can only be determined after these genuine issues of fact have been resolved by a jury. Accordingly, we take no position on whether the petitioners can prevail on their fraud claim or the other causes of action set forth in the complaint.

As their final assignment of error, the petitioners argue that summary judgment was improper because discovery was not complete and a motion to compel was pending before the circuit court. Although we need not address this alternative argument because of our reversal of the circuit court's grant of summary judgment for the reasons set forth above, we note that "[a]s a general rule, summary judgment is appropriate only after adequate time for discovery." *Powderidge Unit Owners Ass'n v. Highland Props.,*

21

*Ltd.*, 196 W.Va. 692, 701, 474 S.E.2d 872, 881 (1996); *see also Precision Coil*, 194 W.Va. at 61, 459 S.E.2d at 338 ("[T]his Court and the United States Supreme Court apply the general principle that summary judgment is appropriate only after the opposing party has had adequate time for discovery." (internal quotations and citation omitted)). As we have explained, "[a] party opposing a motion for summary judgment must have a reasonable opportunity to discover information that is essential to [its] opposition to the motion." *Powderidge Unit Owners Ass'n*, 196 W.Va, at 701, 474 S.E.2d at 881 (internal quotations and citation omitted). Therefore, "a decision for summary judgment before the completion of discovery is 'precipitous.'" *Precision Coil*, 194 W.Va. 61, 459 S.E.2d at 338 (citing *Bd. of Educ. of the Cty. of Ohio v. Van Buren and Firestone, Arch., Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980)).

## IV.  Conclusion

Accordingly, for the foregoing reasons, the circuit court's final order entered on December 19, 2017, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.